UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | |
|---|---|
| **Kathryn Bevan,** | **COMPLAINT** |
| **Plaintiff,** | Civil Action No. 3:23-599 |
| v. | |
| **Equifax Information Services, LLC,** | **JURY TRIAL DEMANDED** |
| **Defendant.** | |

## COMPLAINT

1. This is an action brought by Plaintiff, Kathryn Bevan, for actual, statutory, and punitive damages, attorneys' fees, and costs for Defendant's violations of the Fair Credit Reporting Act, 15 U.S.C. § 1681 et seq, (hereinafter "FCRA").

2. The FCRA exists to protect consumers' privacy and to impose upon those who trade in consumers' private information strict requirements to ensure that the information they report is as accurate as possible.

3. The FCRA likewise demands that consumers' disputes of inaccurate information be taken seriously by the consumer reporting agencies, requiring that they do much more than simply pass information between themselves and furnishers of information electronically without actually investigating the substance of a consumer's dispute and consider all information available in conducting such investigations.

## JURISDICTION AND VENUE

4. This Court has Jurisdiction under the Fair Credit Reporting Act ("FCRA"), 15 U.S.C.

1

§1681p, and 28 U.S.C. §1331 and §1332.

5. Venue is proper in the Columbia Division because the Plaintiff resides in Sumter County and the Defendant transacted business in this division.

## PARTIES

6. Plaintiff, Kathryn Bevan, is a resident and citizen of the State of South Carolina, Sumter County, and is over the age of twenty-one (21) years. Plaintiff is a consumer as that term is defined by the FCRA, 15 U.S.C. §1681a(c).

7. Defendant Equifax Information Services, LLC ("Equifax") is a Georgia company registered to do business in South Carolina with the South Carolina Secretary of State. Defendant may be served with process through its registered agent for service of process, Corporation Service Company, 508 Meeting Street, West Columbia, SC 29169. At all times and in all respects relevant herein, Defendant was doing business in the state of South Carolina and in this division. Defendant is a credit reporting agency as that term is defined by the FCRA, 15 U.S.C. §1681a.

## FACTUAL ALLEGATIONS

8. In 2004, John Morgan Bevan, Jr., Plaintiff's now deceased husband, opened a Capital One credit card Account ending 7526 (hereinafter referred to as the "Account"). Plaintiff was not a joint account holder on this Account and never agreed for her name to be added to this Account as a joint account holder.

9. Plaintiff is not aware of how her name was added to this Account, but it was done without her knowledge or permission. Plaintiff never had possession of the credit card and never made any charges on the Account.

10.     On or about November 15, 2021, Capital One sold the Account to Midland Credit Management (hereinafter "MCM").

11.     On or about January 31, 2022, Plaintiff received a copy of her Equifax credit report. Capital One was not reporting the Account on Plaintiff's credit report. However, Plaintiff's Equifax report did show that Capital One accessed Plaintiff's credit report on November 12, 2021, and January 19, 2022, the last of which occurred after Capital One sold the Account to MCM. Capital One had no permissible purpose for accessing Plaintiff's Equifax credit file and Defendant should have prevented same.

12.     On July 22, 2022, Plaintiff obtained all three of her credit scores through Equifax. At that time, Plaintiff's Equifax credit score had dropped to 733 and her Equifax credit report contained the inaccurate Account being reported by MCM as a collection account.

13.     On or about August 2, 2022, Plaintiff sent a letter to Defendant specifically disputing the MCM collection account that had been added to her credit report. Plaintiff informed Defendant that the MCM collection account came from a Capital One account which belonged to her deceased husband and that she never agreed to be liable for the Account. Plaintiff also informed Defendant that she had requested proof from Capital One and MCM that she had agreed to be liable on the Account and received nothing. Defendant received Plaintiff's letter on August 10, 2022 and rather than actually reinvestigating Plaintiff's dispute, simply forwarded a copy of same to MCM.

14.     On or about August 13, 2022, Plaintiff received a letter from Defendant stating that MCM had verified the reporting of the Account as accurate and therefore, the Account remained on Plaintiff's Equifax credit report. Upon review of her updated Equifax credit

report, Plaintiff saw that the Account was in fact still reporting as a derogatory MCM collection account. She also discovered that Defendant had again improperly allowed Capital One to access her Equifax credit report on July 29, 2022. Capital One had no permissible purpose for accessing Plaintiff's Equifax credit file on this date and Defendant should have prevented Capital One's access of Plaintiff's credit file as there was no Capital One account reporting on Plaintiff's credit.

15.     On or about September 15, 2022, Plaintiff sent a second dispute to Defendant Equifax. In this letter, Plaintiff again informed Defendant that the MCM account was from a Capital One account which belonged to her deceased husband. Plaintiff specifically disputed all liability on the Account and stated it was not her Account. Defendant received this letter on September 23, 2022, and thereafter, forwarded a copy of same to MCM. However, Defendant did no reinvestigation of its own to determine whether the MCM account was correctly and/or accurately reporting on Plaintiff's Equifax credit file.

16.     On or about October 1, 2022, Plaintiff received a letter from Defendant informing her that the disputed Account had been verified as accurate by MCM and, therefore, the Account continued to be reported on her Equifax credit report. Plaintiff's October 1, 2022, Equifax credit report, which was included with the letter, confirmed that the inaccurate, derogatory MCM collection account remained. This credit report also showed that on August 30, 2022, Defendant again improperly allowed Capital One access to Plaintiff's Equifax credit report. Capital One had no permissible purpose for accessing Plaintiff's credit file on this date.

17.     On or about October 26, 2022, Plaintiff sent a third dispute letter to Defendant. In

this letter Plaintiff requested copies of any and all documents Defendant received and/or reviewed to verify that the disputed Account belonged to her. Plaintiff also reiterated that the MCM collection account was originally a Capital One account that belonged to Plaintiff's deceased husband. Plaintiff specifically stated that the MCM account was not her Account and that she needed the Account to be deleted immediately as she was applying for assisted living facilities and was afraid this derogatory account would impact her ability to get approved. Equifax received this letter on November 4, 2022, and rather than actually reinvestigating Plaintiff's dispute, simply forwarded same to MCM.

18. On or about November 16, 2022, Plaintiff received a letter from Defendant informing her that MCM had again verified the Account as reporting accurately. Accordingly, the Account remained on Plaintiff's Equifax credit file. Plaintiff's credit report also showed that on September 27, 2022, Defendant had again improperly allowed Capital One to access part or all of Plaintiff's Equifax credit report. Capital One had no permissible purpose for accessing Plaintiff's credit file on this date.

19. To date, Defendant continues to report the inaccurate and derogatory Account as belonging to Plaintiff.

20. Defendant failed to make a reasonable investigation into Plaintiff's disputes.

21. Upon receipt of the ACDV responses, Defendant simply accepted MCM's verification of the Account and did not undertake to perform any investigation of its own.

22. For over 35 years, courts have recognized that a CRA cannot rely upon its data furnisher exclusively, when the consumer disputes the accuracy of the furnisher's information. The CRA must make some independent investigation of its own. "Merely

5

reporting whatever information the creditor furnished was not reasonable, especially where the defendant knew of the impending dispute between the [consumer] and [furnisher]." *Swoager v. Credit Bureau of Greater St. Petersburg,* 608 F.Supp. 972 (M.D. Fla. 1985); *see also Bailey v. Equifax Credit Info. Servs.,* 2016 U.S. Dist. LEXIS 196516, 2016 WL 11540113 (N.D. Ga. Nov. 28, 2016); *Crane v. TransUnion*, 282 F. Supp. 2d 311 (E.D. Pa. 2003)(explaining that a CRA must "go beyond the original source" to satisfy its duties to investigate).

23.     If the CRA knows or should know that the furnisher is unreliable, then a "reasonable reinvestigation" may require verifying the accuracy of the furnisher's information directly. The "grave responsibility" imposed by §1681i(a) must consist of something more than merely parroting information received from other sources. *Cushman v. Trans Union Corp.*, 115 F.3d 220, 225 (3d Cir. 1997).

## COUNT ONE
(Fair Credit Reporting Act)

24.     The Plaintiff adopts, to the extent same are consistent with the allegations contained herein, the averments and allegations of paragraphs 8 through 23 hereinbefore as if fully set forth herein.

25.     Defendant maintains and distributes credit data files on the Plaintiff's credit. Defendant negligently failed to comply with the requirements imposed under the FCRA, 15 U.S.C. §1681 et seq., including but not limited to: (a) failing to follow reasonable procedures to assure maximum possible accuracy of the information in consumer reports, as required by 15 U.S.C. §1681e(b); (b) failing to comply with the reinvestigation

requirements in 15 U.S.C. §1681i; and (c) failing to comply with the requirements of §1681e(a) by providing the Plaintiff's credit report to a third party without a permissible purpose under §1681(b).

26. Defendant repeatedly failed to delete and suppress erroneous, false, misleading, and/or inaccurate information from the Plaintiff's credit file.

27. Defendant repeatedly failed to reinvestigate the Plaintiff's disputes regarding the inaccurate collection account being reported on her Equifax credit file.

28. Defendant repeatedly allowed Capital One to view and/or access Plaintiff's credit reports when Capital One had no permissible purpose for such under §1681(b).

29. Due to Defendant's failure to comply with the requirements of the Fair Credit Reporting Act, the Plaintiff is entitled to statutory damages.

30. As a result of Defendant's violations of the FCRA, the Plaintiff suffered, continues to suffer, and will suffer future damages, including, but not limited to, damage to Plaintiff's credit score and credit reputation, anxiety, worry, fear, loss of sleep, frustration, fright, physical pain and sickness, and mental anguish. Additionally, the damage to Plaintiff's credit delayed her applying for assisted living facilities. Plaintiff has Parkinson's disease and Defendant's actions exacerbated Plaintiff's symptoms. Plaintiff is entitled to actual damages in an amount to be determined by the jury.

31. In addition, the Plaintiff has incurred litigation expenses and attorneys' fees which, but for the acts and omissions of Defendant alleged herein, would not have been necessary.

32. Plaintiff is entitled to her attorneys' fees, pursuant to 15 U.S.C. §1681n(a).

## COUNT TWO
(Fair Credit Reporting Act)

33. The Plaintiff adopts, to the extent same are consistent with the allegations contained herein, the averments and allegations of paragraphs 8 through 32 hereinbefore as if fully set forth herein.

34. Defendant willfully failed to comply with the requirements imposed under the FCRA, 15 U.S.C. §1681 et seq., including but not limited to: (a) failing to follow reasonable procedures to assure maximum possible accuracy of the information in consumer reports, as required by 15 U.S.C. §1681e(b); (b) failing to comply with the reinvestigation requirements in 15 U.S.C. §1681i; and (c) failing to comply with the requirements of §1681e(a) by providing the Plaintiff's credit report to a third party without a permissible purpose under §1681(b).

35. Defendant repeatedly failed to delete and suppress erroneous, false, misleading, and/or inaccurate information from the Plaintiff's credit file.

36. Defendant willfully failed to reinvestigate the Plaintiff's disputes regarding the inaccurate collection account being reported on her Equifax credit file.

37. Defendant willfully allowed Capital One to view and/or access Plaintiff's credit reports when Capital One had no permissible purpose for such under §1681(b).

38. As a result of Defendant's willful violations of the FCRA, the Plaintiff suffered, continues to suffer, and will suffer future damages, including, but not limited to, damage to Plaintiff's credit score and credit reputation, anxiety, worry, fear, loss of sleep, family discord, anger, fright, physical pain and sickness, and mental anguish. Additionally, the

damage to Plaintiff's credit file, delayed her applying for assisted living facilities. Plaintiff has Parkinson's disease and Defendant's actions exacerbated Plaintiff's symptoms. Plaintiff is entitled to actual damages in an amount to be determined by the jury.

39. In addition, the Plaintiff has incurred litigation expenses, and attorneys' fees which, but for the acts and omissions of Defendant alleged herein, would not have been necessary.

40. Further, Defendant's acts and omissions were willful and demonstrate a reckless disregard for the Plaintiff's rights. Therefore, Defendant is liable to the Plaintiff for punitive damages in an amount to be determined by the jury.

41. Plaintiff is entitled to her attorneys' fees, pursuant to 15 U.S.C. §1681o(a)(2).

## AMOUNT OF DAMAGES DEMANDED

WHEREFORE, PREMISES CONSIDERED, Plaintiff demands a judgment against Defendant for the following:

A. Actual and statutory damages from Defendant pursuant to 15 U.S.C. §1681n(a)(1)(A) and/or 15 U.S.C. §1681o(a)(1);

B. Punitive damages from Defendant pursuant to 15 U.S.C. §1681n(a)(2);

C. Costs and reasonable attorney's fees from Defendant pursuant to 15 U.S.C. §1681n(a)(3) and/or 15 U.S.C. §1681o(a)(2); and

D. For such other and further relief as the Court may deem just and proper

/s/ Penny Hays Cauley
Penny Hays Cauley, Fed. ID No. 10323

/s/ William K. Geddings
William K. Geddings, Fed. ID No. 12584
Attorneys for Plaintiff

**OF COUNSEL:**
HAYS CAULEY, P.C.
1303 West Evans Street
Florence, SC 29501
(843) 665-1717
(843) 665-1718 Facsimile
phc917@hayscauley.com


**PLAINTIFF DEMANDS A TRIAL BY STRUCK JURY ON ALL COUNTS**


                              */s/ Penny Hays Cauley*
                              Of Counsel


**DEFENDANT TO BE SERVED VIA CERTIFIED MAIL:**
Equifax Information Services, LLC
c/o Corporation Service Company - Registered Agent
508 Meeting Street
West Columbia, SC 29169